1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| BOY 7;<br><br>             Plaintiff,<br><br>   vs.<br><br>BOY SCOUTS OF AMERICA, a congressionally chartered corporation incorporated in the District of Columbia;<br><br>             Defendant. | NO.  CV-10-449-RHW<br><br>COMPLAINT<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

Plaintiff BOY 7, by and through his attorneys of record, Timothy D. Kosnoff of Pfau Cochran Vertetis Kosnoff, PLLC, and Leander L. James, of James, Vernon and Weeks, P.A., hereby states and alleges as follows:

## I.      INTRODUCTION

1.      This complaint is based on the childhood sexual abuse of Plaintiff caused by Defendant Boy Scouts of America's negligent, willful, wanton, reckless, and tortious acts and omissions.

## II.      PARTIES

2.      Plaintiff BOY 7 is a domiciliary of Washington State.

COMPLAINT - 1

<table>
<tr><td>JAMES, VERNON & WEEKS, P.A.<br>1626 Lincoln Way<br>Coeur d'Alene, Idaho 83814<br>PHONE:  (208) 667-0683<br>FACSIMILE:  (208) 664-1684</td><td>PFAU COCHRAN VERTETIS KOSNOFF, PLLC<br>701 Fifth Avenue, #4730<br>Seattle, WA 98104<br>PHONE: (206) 462-4334  F<br>FACSIMILE: (206) 623-3624</td></tr>
</table>

3.      Defendant BOY SCOUTS OF AMERICA (hereinafter "BSA") is, and has always been, a federally chartered corporation pursuant to 36 USC § 30901 and domiciliary of the District of Columbia.

### III.      JURISDICTION AND VENUE

4.      The Court has diversity jurisdiction pursuant to Judicial Code, 28 U.S.C. § 1332, because this controversy is between citizens of different states; Plaintiff is diverse from the Defendant; and the amount in controversy exceeds the value of $75,000, exclusive of interest and costs.

5.      The Court has jurisdiction pursuant to 36 U.S.C. § 30904, which provides that BSA may sue and be sued in the courts of the United States.

6.      The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a) and under pendent jurisdiction principles.

7.      Venue is proper under Judicial Code, 28 U.S.C. § 1391(a) (1) and (2) because substantial events, acts, and omissions occurred in Washington State.

### IV.      COMMON STATEMENT OF FACTS

8.      Congress founded BSA in the United States in 1910.  BSA arose as a federally chartered, character-building organization developed during the early twentieth-century to counter the ill effects of America's transformation from a rural and small town culture to an urban society.  BSA promoted itself as a vehicle for boys to be instructed in good citizenship, patriotism, and efficient social organization.    BSA was a commercial effort that sophisticatedly used powerful American symbols and modern advertising techniques to sell a

COMPLAINT - 2

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:  (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624

national belief that BSA could best mold the proper expression of American boyhood.  BSA received the United States government's imprimatur through BSA's federal charter.

9. In 1916, Congress granted BSA a federal charter, now codified as 36 U.S.C. Ch. 309.  Under that Charter, Congress granted BSA the exclusive right to BSA's name, emblems, badges, and descriptive words and markings.

10. Since 1910, BSA has derived millions of dollars per year licensing the rights to its name, emblems, scouting paraphernalia, and BSA-branded merchandise to affiliated scouting organizations throughout the United States and abroad (*See* 36 U.S.C. § 80305). BSA has realized income from these federally-protected assets by marketing them to parents and their children, including Plaintiff.

11. BSA's marketing includes encouraging parents to enroll their children in BSA. Enrollment secures parents' and children's commitment to follow a system that encourages parents to entrust their children's health and safety to BSA.  This entrustment empowers BSA to secure each child's oath to uphold the "Scout Law," to adopt the "Scout" identity, and to adhere to a system that requires children to engage in activities that expose them to adults and others.  This system includes over-night outings, camping events, and trips away from parents. The system is reward-based, obligating the child to purchase emblems, badges, and other Scouting paraphernalia, which in turn creates profit for the federally-charted organization.

12. In addition to being federally created, federally chartered, and endowed by Congress with exclusive economic rights, BSA is funded by the federal government, private donations, membership dues, corporate sponsors, and special events.

COMPLAINT - 3

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:  (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624

13.     BSA is the 18th largest nonprofit in the United States, with income exceeding $780 million dollars a year.

14.     BSA receives many federal subsidies, including (1) free access to national forest lands (16 USC § 539f); (2) free use of Defense Department equipment and facilities for BSA Jamborees (10 U.S.C. § 2554); (3) free ground and air transportation, communications, emergency, and technical services from the National Guard (32 U.S.C. § 508); (4) free use of meeting facilities, transportation, and support services at United States military bases world-wide (10 U.S.C. § 2606); (5) free firearms, ammunition, repairs, supplies, and marksmanship training equipment (36 U.S.C. § 40731); and (6) free military surplus (10 U.S.C. Ch. 943) and Department of Agriculture  grants (7 U.S.C. § 7630).

15.     BSA uses, among other things, overnight outdoor activities such as camping, aquatics, and hiking to (1) achieve the aims of character, citizenship, and physical fitness building and (2) further its reward-based system that ensures an economic benefit to BSA. Plaintiff is among more than 110 million American boys who have been BSA members.

16.     Today, BSA is the largest youth organization in the United States.  BSA serves nearly five million boys, ages ten to eighteen.

17.     BSA estimates that 20% of American boys have contact with scouting either as members or by attending Scout functions.

18.     Since 1910, hundreds of millions of parents have entrusted their sons to BSA's care, guidance, and instruction.

19.     Since its inception, BSA aggressively marketed the wholesomeness and safety of its programs to the American public.  Simultaneously, BSA fraudulently concealed from

COMPLAINT - 4

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:  (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624

scouts, their parents, and the American taxpayer BSA's certain knowledge that pedophiles had

been infiltrating BSA in large numbers for many years.  BSA fraudulently concealed said

information from Plaintiff and his parents.  BSA also misrepresented to other scouts, their

parents, and the American taxpayer that scouts were safe in scouting programs when, in fact,

scouts were at an unreasonably heightened risk of sexual abuse by adult scout leaders.  BSA

made said misrepresentations to Plaintiff and his parents.

20.    BSA's internal records, known as the "Ineligible Volunteer" files (hereinafter

"the I.V. files"), are a unique repository of documents BSA secretly began amassing shortly

after its founding in 1910.

21.    The I.V. files reveal that BSA, far from being safe and wholesome, has long

attracted and been a sanctuary for pedophiles.

22.    The I.V. files contain internal memoranda demonstrating BSA's awareness and

concern about the threat that pedophiles in BSA posed to its name, reputation, and economic

interests, but little concern for the danger pedophiles presented to scouts and others in the

community.

23.    BSA's I.V. files are a hidden repository of informative data containing the

identities of pedophiles that had successfully infiltrated scouting.  The I.V. files highlight

BSA's vulnerabilities, including pedophiles' techniques used to enter scouting, pedophiles'

patterns for grooming victims, and widely-found biographical and behavioral characteristics

shared by pedophiles that had entered or were attempting to enter scouting.

COMPLAINT - 5

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:  (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624

24.     The overwhelming evidence the I.V. files present shows that for a century BSA has known of BSA's distinctive characteristics that render scouts particularly prone to pedophiles' abuse.

25.     By 1935, BSA had accumulated approximately 2,000 files on pedophiles that had successfully infiltrated or attempted to infiltrate its program.

26.     In the 1970's, BSA recognized the potential liabilities represented by possessing and maintaining the I.V. files.  By 2005, BSA's secret cache of files on pedophiles exceeded 20,000.

27.     Over the course of two years in the early 1970s, three BSA executives reviewed and permanently destroyed thousands of I.V. files

28.     BSA executives kept no retention logs showing which or how many of the files BSA destroyed.  BSA made no contemporaneous record of its criteria in determining which files to destroy and which to save.

29.     Approximately 6,000 files survived BSA's file-purge and are in BSA's possession.  Approximately 1900 of those files are now in the public domain.

30.     The files demonstrate that BSA opened a new I.V. file on a pedophile every other day for fifty years.

31.     The I.V. files demonstrate that BSA had overwhelming evidence (1) that scouting attracts pedophiles at an alarming rate and (2) of scouting's distinctive characteristics that make it attractive to pedophiles, including:

        a.      Scouting provides a pedophile access to boys alone and away from their parents in secluded settings like camp-outs and overnight hikes;

COMPLAINT - 6

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:  (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624

b.      Scouting provides opportunities for a pedophile to seduce a boy by getting him in situations where the boy has to change clothing or spend the night with him;

c.      A pedophile scout leader can, depending on the pedophile's preferred victim age, volunteer for and be sure to have access only to boys of a certain age;

d.      BSA conditions boys to the concept of strict obedience to the scout leader and a bonding mechanism that pedophiles crave;

e.      BSA promotes the idea of secret ceremonies, rituals, and loyalty oaths, all of which help facilitate a pedophile's efforts to keep his victims silent and compliant;

f.      BSA conducted no criminal background checks on its volunteers;

g.      BSA did not prohibit adults from sleeping in tents with boys overnight;

h.      BSA did not prohibit adult leaders from spending time alone with individual scouts;

i.      BSA did not prohibit adult scout leaders from having contact with scouts outside of authorized scouting activities;

j.      For decades, BSA re-admitted pedophiles it had previously removed for child abuse after a period of BSA "probation," thereby exposing unsuspecting children to sexual abuse;

k.      BSA had a practice of not reporting scout abuse incidents to law enforcement;

l.      BSA had a pattern of reaching an accommodation with a pedophile, in which the pedophile would resign from scouting and the BSA would agree not to report the child sexual abuse to civil authorities;

COMPLAINT - 7

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:   (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624

m.      BSA refused requests to share its list of known abusers with other

youth organizations, knowing that pedophiles it had ejected often joined other youth-serving

organizations;

n.      BSA refused to produce its I.V. files to its review board and scout-

safety consultants, who were endeavoring to develop and implement meaningful safeguards

and barriers to pedophile infiltration;

o.      BSA refused to fingerprint, photograph or perform background checks

on its adult volunteers, allowing removed pedophiles using an alias to sneak back in to

scouting through another troop;

p.      BSA refused to utilize widely-accepted organizational best practices

that would establish reasonable barriers to intrusion by pedophiles;

q.      BSA refused to educate local councils, staff, and troop leaders

regarding the true risks posed by pedophiles to scouts; and

r.      BSA refused to effectively monitor local councils and troops to ensure

that appropriate safeguards were being used in the selection and retention of adult scout

leaders.

32.     Between 1987 and 2005, BSA settled sixty-one lawsuits in which BSA was

allegedly negligent in failing to warn or protect scouts from sexually abusive adult scout

leaders.

33.     Since 1987, BSA has paid millions of dollars in settlements and verdicts

arising from sexual abuse of scouts by scout leaders.  Upon information and belief, many of

COMPLAINT - 8

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:   (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624

these settlements included confidentiality agreements required by BSA to prevent the abuse's facts and circumstances from becoming public.

34.    BSA continues to make false and misleading public statements regarding the risks of sexual abuse in scouting; continues to minimize and downplay the harm of sexual abuse to children in scouting; fails to reach out to provide support and assistance to boys it knows were sexually abused by adult scout leaders; and continues to deny the truth about its historical knowledge of the nature and extent of sexual abuse of scouts by adult scout leaders.

35.    BSA failed to establish reasonable safeguards to prevent pedophiles from entering its programs.

36.    BSA has known for decades that scouting involved an unreasonably high risk of sexual abuse by adult scout leaders.  BSA made repeated false counterfactual claims that the number of pedophiles in scouting was comparatively small, that scouts were reasonably safe from sexual abuse by adult scout leaders, and that BSA is not a magnet for pedophiles, all of which BSA made (1) knowing that the claims were false or (2) with reckless disregard for the truth or falsity.  Plaintiff alleges that he trusted BSA and that he reasonably relied upon the BSA's representations that it presented a moral and safe place for boys.

37.    Plaintiff alleges that had BSA notified Plaintiff, his parents, civil authorities, or the scouting public of the pervasiveness of sexual abuse by BSA's adult scout leaders, Plaintiff would either not have joined the BSA or been allowed by his parents to join BSA or, if BSA had educated him of the nature of risks of abuse by adult scout leaders, that he would have taken steps to protect himself from the grooming and sexual abuse to which his adult scout leader subjected him.

COMPLAINT - 9

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:  (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624

38.     BSA deliberately withheld information from scouts and their parents, including Plaintiff and his parents.  The withheld information included: the true nature and extent of pedophilia in scouting; the warning signs of abuse in scouting, of which BSA was aware; and the methods pedophiles had been using to gain access to scouts, to groom them for abuse, and to keep them silent.  BSA's timely communication of this information would have enabled scouts, including Plaintiff, to protect themselves from sexual abuse by pedophiles in scouting.

39.     BSA had a special relationship with scouts and other boys, including Plaintiff, who participated in its programs.

40.     BSA had a special relationship with adult scout leaders it utilized to work with children, including Plaintiff whose parents entrusted him to BSA's care.

*Plaintiff BOY 7*

41.     At all relevant times, BOY 7 was a young boy living with his parents in Washington State.  BOY 7 is now an adult male living in Monroe, Washington.  Plaintiff BOY 7 is currently identified only by pseudonym.  He may be identified more fully in discovery or by amendment.

42.     During all relevant times, BOY 7 was a member of Scout Troop 63 in Spokane, Washington.  As a result, BOY 7 was molested by a Scout leader who was the camp doctor at Camp Cowles.

43.     Upon information and belief, at all relevant times, the Scout leader was a Washington State resident.

44.     During all relevant times, the Scout leader was a mandatory child abuse reporter pursuant to RCW 26.44.030 or its equivalent at the time of abuse.

COMPLAINT - 10

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:  (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624

45.    For the purpose of furthering the camp doctor's duties as a BSA Scout leader, BSA sought and gained BOY 7's parents' trust, confidence, and consent for BOY 7 to participate in BSA activities and to otherwise spend considerable time alone with scouting leaders such as the Camp Cowles camp doctor.  BSA also gained BOY 7's parents' directive to BOY 7 that he respect the Scout leader's authority and guidance and comply with his instructions.

46.    For the purpose of furthering his duties as a BSA Scout leader, the Camp Cowles camp doctor sought and gained BOY 7's trust, friendship, admiration, and obedience. As a result, BOY 7 was conditioned to comply with the Scout leader's direction and to look to him as an authority figure.

47.    Using the power, authority, and trust gained by his position within the BSA and availing himself of BSA's misrepresentations to parents and scouts that the BSA was a moral and safe place for boys, the Camp Cowles camp doctor enticed, induced, directed, and coerced BOY 7 to engage in deviant sexual acts with him.

48.    The Scout leader sexually abused Plaintiff BOY 7 in approximately 1974 in Washington State.

49.    BSA was, at all relevant times, acting in loco parentis to Plaintiff.

50.    Within the last three years, Plaintiff has discovered that BSA had known for decades before he was abused that scouting involved an unreasonably high risk of sexual abuse by adult scout leaders and that BSA's public pronouncements that scouts were reasonably safe from sexual abuse by adult scout leaders were false.  Plaintiff alleges that had BSA notified or advised Plaintiff; his parents; or civil authorities, including Congress, or been

COMPLAINT - 11

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:  (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624

candid with the scouting public regarding the pervasiveness of sexual abuse of boys by an alarmingly large percentage of BSA's adult scout leaders, Plaintiff would either (1) not have joined the BSA or (2) not been allowed to join BSA.

51.     Had BSA informed Plaintiff of the nature and frequency of the risks of abuse by adult scout leaders, Plaintiff would have taken steps to protect himself from the grooming and sexual abuse to which his adult scout leader subjected him.

## V.     CAUSES OF ACTION

### Negligence and Breach of Fiduciary Duty

52.     Plaintiff incorporates all paragraphs of this complaint as if fully set forth under this count and allege as follows.

53.     Defendant had a special relationship with Plaintiff while Plaintiff was a minor. BSA knew or reasonably should have foreseen the heightened risks of sexual abuse in its programs and had a duty to warn or protect foreseeable victims, including Plaintiff.

54.     Based upon the tens of thousands of prior incidents of BSA documented pedophilic abuse of scouts in BSA's programs, BSA was on notice of an extremely dangerous condition:  sexual abuse of child scouts by adult scout leaders.  Sexual abuse of child scouts by adult scout leaders was the precise cause of the injury Plaintiff sustained.

55.     Furthermore, at all relevant times, Boy Scout leaders were mandatory child abuse reporters pursuant to RCW 26.44.020(8) or its equivalent at the time.

56.     BSA breached both a statutorily prescribed duty and common law duty of reasonable care by failing to report to civil authorities known risks to children.

COMPLAINT - 12

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:  (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624

57.    BSA breached a common law duty of reasonable care by failing to protect or warn Plaintiff or Plaintiff's parents of the dangers of pedophilic sexual abuse within scouting.

58.    BSA as an owner and/or possessor of the land upon which it knowingly/or negligently allowed the Scout leader to groom and sexually abuse children, breached a common law duty to protect BOY 7 from an unreasonable risk of harm arising from the Scout leader's presence on BSA's properties.

59.    But for the BSA's breaches of duty, acts, and omissions, Plaintiff would not have been abused, because Plaintiff would not have become a member of BSA and would not have participated in scouting activities that allowed him to come in contact with the pedophile that sexually abused him.  Alternatively, but for the BSA's breaches of duty, acts, and omissions Plaintiff would have been able to protect himself from the pedophile that sexually abused him and would not have been sexually abused by the pedophile.

60.    BSA failed to train and supervise its scout masters and other scout leaders (1) in the proper implementation of BSA's guidelines, policies, and procedures regarding the treatment of child sexual abuse victims; (2) to monitor and insure compliance with BSA's guidelines, policies, and procedures, and (3) in treating child sexual abusers and reporting child sexual abuse.

61.    BSA also failed to properly investigate allegations of abuse and failed to reach out and provide services to victims.

62.    BSA knew, or in the exercise of reasonable care should have known, that its failure to erect reasonable barriers to pedophiles' entry into scouting or to timely adopt

COMPLAINT - 13

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:  (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624

policies and practices addressing the problem of pedophilic infiltration and abuse of scouts would result in sexual abuse of innocent boy scouts, including Plaintiff.

63.    BSA's negligence, breaches of duty, and resulting  molestation of Plaintiff were direct and proximate causes of special and general damages to Plaintiff, including, past and future physical and emotional pain and dysfunction and general, non economic damages in an amount to be determined at trial.  As a further result of the sexual abuse, Plaintiff has incurred or will continue to incur costs for counseling and psychological treatment and has lost earning capacity due to this damage in an amount to be proved at trial.

### Willful Misconduct, Wanton Misconduct and Reckless Misconduct

64.    Plaintiff incorporates all paragraphs of this complaint as fully set forth under this count and further allege as follows.

65.    The conduct described above shows that BSA engaged in willful, wanton, and/or reckless conduct that reflects its conscious disregard of children's health and safety, including Plaintiff's health and safety, and/or BSA's intent to harm, and that Plaintiff was severely damaged as a result.

66.    At the very least, BSA was recklessly indifferent to injury that would likely result from its acts and omissions.  It knew that pedophiles were infiltrating scouting at an alarming rate, and it knew that children would suffer severe damage from being sexually abused as a result of this infiltration.  Plaintiff was the victim of BSA's reckless indifference and its willful and wanton misconduct.

COMPLAINT - 14

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:  (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624

**Intentional Infliction of Emotional Distress**

67.     Plaintiff incorporates all paragraphs of this complaint as fully set forth under this count and further allege as follows.

68.     BSA knew or should have known that Plaintiff's perpetrator was a dangerous child molester.

69.     BSA further knew or should have known that it was substantially certain that the pedophiles described above would continue to sexually abuse children, including the abuse they inflicted upon Plaintiff, if BSA failed to warn parents or failed to report the pedophiles to civil authorities and that such abuse would cause severe and emotional distress to Plaintiff.

70.     BSA's conduct was an outrageous violation of societal norms and went so far beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community which resulted in severe emotional distress to Plaintiff.  BSA's conduct was a result of a willful, reckless, and outrageous indifference to highly unreasonable risk of harm and a conscious indifference to Plaintiff's health, safety, and welfare.

71.     BSA's conduct was the result of a willful, reckless and outrageous indifference to a highly unreasonable risk of harm and a conscious indifference to Plaintiff's health, safety and welfare.

**Violation of RCW 9.68A: Sexual Exploitation of Children**

72.     Plaintiff incorporates all paragraphs of this complaint as fully set forth under this count and further allege as follows.

COMPLAINT - 15

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:  (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624

73.     The Scout leader's actions of sexually assaulting and exploiting BOY 7 violated Chapter 9.68A RCW, the Sexual Exploitation of Children Act, including RCW 9.68A.040, 9.68A.070, and 9.68A.090.

74.     The Scout leader's violations of Chapter 9.68A RCW, the Sexual Exploitation of Children Act, were done with BSA's knowledge and acquiescence.  Accordingly, under RCW 9.68A.030, BSA has also violated Chapter 9.68A RCW.

75.     Plaintiff is therefore entitled to an award of attorney's fees and costs against BSA pursuant to RCW 9.68A.130.

**Estoppel and Fraudulent Concealment**

76.     Plaintiff incorporates all paragraphs of this complaint as fully set forth under this count and further allege as follows.

77.     BSA engaged in a plan of action to cover up incidents of the sexual abuse of minors by scout leaders and to prevent disclosure, prosecution and civil litigation including, but not limited to: failure to report incidents of abuse to law enforcement or child protection agencies, denial of abuse it had substantiated, and by failure to seek out and redress the injuries these men had caused.  Based on these actions, the BSA engaged in fraudulent concealment and is estopped from asserting defense of statute of limitations and/or laches.

**Civil Conspiracy**

78.     Plaintiff incorporates all paragraphs of this complaint as fully set forth under this count and further allege as follows.

79.     BSA, by and through its agents and representatives, conspired to cover up incidents of sexual abuse of minors by scout leaders and to prevent disclosure, prosecution

COMPLAINT - 16

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:  (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624

and civil litigation including, but not limited to: failure to report incidents of childhood sexual abuse to law enforcement or child protection agencies; denial of abuse BSA had substantiated; aiding criminal child molesters in evading detection, arrest, and prosecution; allowing pedophiles to cross state and international borders for purposes of gaining access to uninformed parents' children, whom they could sexually abuse; failure to warn; and failure to seek out and redress the injuries its adult scout leaders had caused.  Based on these actions, BSA, by and through its agents and representatives, conspired for the unlawful purpose of concealing and suppressing information on the danger and threat that BSA's adult scout leaders posed to unsuspecting children, including Plaintiff.

80.     BSA placed its interests ahead of the protection of children, including Plaintiff. BSA's conduct in concealing the dangers of sexual abuse of scouts constitutes outrageous or egregious wrongdoing in willful disregard for Plaintiff's rights.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the court enters judgment in favor of Plaintiff and against BSA for the following:

1.     Special damages for medical treatment expenses, lost earnings, and lost earning capacity and the expenses of medication and other special expenses, both in the past and continuing into the future, in amounts to be determined at the time of trial;

2.     General damage for physical, mental, and emotional injury and disturbance, and other disorders resulting from the BSA's acts and omissions complained of herein;

3.     For attorney fees, prejudgment interest, costs, and exemplary damages allowed by law; and

COMPLAINT - 17

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:  (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624

4.     For such other relief as this court determines just in the premises.

DATED this ____th day of December, 2010.

PFAU COCHRAN VERTETIS KOSNOFF

By/s/Timothy D. Kosnoff_____
        Timothy D. Kosnoff, WSBA No. 16586
        Tim@pcvklaw.com
        Attorneys for Plaintiff

JAMES, VERNON & WEEKS, P.A.

By/s/ Leander L. James_____
        Leander L. James, WSBA No. 24043
        ljames@jvwlaw.net
        Attorneys for Plaintiff

        4816-0645-0440, v. 2

COMPLAINT - 18

JAMES, VERNON & WEEKS, P.A.
1626 Lincoln Way
Coeur d'Alene, Idaho 83814
PHONE:  (208) 667-0683
FACSIMILE:  (208) 664-1684

PFAU COCHRAN VERTETIS KOSNOFF, PLLC
701 Fifth Avenue, #4730
Seattle, WA 98104
PHONE: (206) 462-4334  F
FACSIMILE: (206) 623-3624